UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ROBERT ROSS,

            Plaintiff,

     v.

BAR NONE ENTERPRISES, INC.,

            Defendant.

No.  2:13-cv-00234-KJM-KJN

ORDER

The court heard argument on plaintiff's unopposed motion for an order preliminarily approving a class settlement and provisionally certifying the settlement class on June 20, 2014.  Mark Thomas and Frank Moore appeared for plaintiff.  Counsel for defendant did not appear.  After carefully considering the parties' submissions and the applicable law, the court GRANTS plaintiffs' motion for the reasons set forth below.

I.      FACTUAL AND PROCEDURAL BACKGROUND

This case arises from defendant's alleged improper classification of plaintiff and other employees as exempt under the Fair Labor Standards Act ("FLSA"), the California Labor Code, and California Industrial Welfare Commission order provisions.

On February 6, 2013, plaintiff initiated this action by filing an individual complaint for damages against defendant.  ECF No. 1.  On April 2, 2013, before defendant filed

1

1   an answer, plaintiff filed a first amended complaint.  ECF No. 6.  Defendant answered on

2   April 24, 2013.  ECF No. 8.  On September 4, 2013, plaintiff moved the court to file a second

3   amended complaint to allege class claims.  ECF No. 16.  The court granted plaintiff's motion on

4   October 24, 2013, and plaintiff's second amended complaint, captioned as a class action

5   complaint, was deemed filed on that date.  ECF No. 19.  On November 13, 2013, defendant

6   answered the second amended complaint.  ECF No. 21.

7         The second amended complaint alleges as follows.  Because of their exempt status,

8   plaintiff and other similarly situated employees were not compensated for overtime work

9   performed in excess of forty hours in a week and in excess of eight hours in a day, and were

10   denied meal and break periods.  Second Am. Compl. ("SAC") ¶ 18, ECF No. 20.  Defendant

11   failed to maintain records showing the daily hours worked by plaintiff and class members, and

12   failed to provide itemized statements showing all hours worked.  *Id.*  Defendant failed to provide

13   plaintiff and the class meal period and rest period breaks.  *Id.* ¶¶ 19–20.  Plaintiff brings nine

14   separate claims for relief: (1) unlawful failure to pay overtime compensation in violation of

15   FLSA; (2) unlawful failure to pay overtime compensation in violation of the California Labor

16   Code; (3) failure to provide itemized statements of hours and wages in violation of the California

17   Labor Code; (4) failure to provide meal period breaks in violation of the California Labor Code;

18   (5) failure to provide rest period breaks in violation of the California Labor Code; (6) failure to

19   pay waiting time penalties in violation of the California Labor Code; (7) unfair and unlawful

20   business practices under the California Business & Professions Code; (8) recovery of penalties

21   under the Labor Code Private Attorneys General Act; and (9) declaratory relief.  SAC at 8–20.

22         On May 16, 2014, following the parties' participation in mediation, plaintiff filed a

23   motion for preliminary approval of class action settlement.  ECF No. 22.

24   II.   STANDARDS AND PROCESS FOR CLASS SETTLEMENT APPROVAL

25         "Courts have long recognized that 'settlement class actions present unique due

26   process concerns for absent class members.'"  *In re Bluetooth Headset Prods. Liab. Litig.*

27   (*Bluetooth*), 654 F.3d 935, 946 (9th Cir. 2011) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011,

28   1026 (9th Cir. 1998)).  To protect absent class members' due process rights, Rule 23(e) of the

1  Federal Rules of Civil Procedure permits a class action to be settled "only with the court's

2  approval" "after a hearing and on a finding" the agreement is "fair, reasonable, and adequate."

3  Moreover, if "the 'settlement agreement is negotiated prior to formal class certification,'" then

4  "'there is an even greater potential for a breach of fiduciary duty owed the class.'" *Radcliffe v.*

5  *Experian Info. Solutions Inc.*, 715 F.3d 1157, 1168 (9th Cir. 2013) (alteration omitted) (emphasis

6  omitted) (quoting *Bluetooth*, 654 F.3d at 946).  "Accordingly, such agreements must withstand an

7  even higher level of scrutiny for evidence of collusion or other conflicts than is ordinarily

8  required under Rule 23(e) before securing the court's approval as fair." *Bluetooth*, 654 F.3d at

9  946 (citations omitted).  "Judicial review must be exacting and thorough." MANUAL FOR

10 COMPLEX LITIGATION (FOURTH) § 21.61 (2004).

11        "Review of a proposed class action settlement generally involves two hearings."

12 *Id.* § 21.632.  First, the parties submit the proposed terms of the settlement so the court can make

13 "a preliminary fairness evaluation," and if the parties move "for both class certification and

14 settlement approval, the certification hearing and preliminary fairness evaluation can usually be

15 combined." *Id.*  Then, "[t]he judge must make a preliminary determination on the fairness,

16 reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of

17 the certification, proposed settlement, and the date of the final fairness hearing." *Id.*  After the

18 initial certification and notice to the class, the court then conducts a second fairness hearing

19 before finally approving any proposed settlement. *Narouz v. Charter Commc'ns, LLC*, 591 F.3d

20 1261, 1267 (9th Cir. 2010).

21        Regarding class certification, the parties' stipulation that the class should be

22 certified is not sufficient; instead the court must pay "undiluted, even heightened, attention" to

23 class certification requirements. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *but*

24 *see* NEWBERG ON CLASS ACTIONS § 11:28 (4th ed.) ("Since *Amchem*, approval of settlement

25 classes is generally routine and courts are fairly forgiving of problems that might hinder class

26 certification were the case not to be settled." (collecting cases)).  Regarding notice to the class,

27 the court must ensure the class members "receive 'the best notice that is practicable under the

28 /////

3

1  circumstances.'"  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2558 (2011) (quoting FED. R.

2  CIV. P. 23(c)(2)(B)).

3  III.     ANALYSIS

4         A.     Class Certification

5         Plaintiff seeks certification of the following class for settlement purposes:

6            [T]he 28 employees identified as Inventory Specialists who were
             misclassified as exempt employees by Bar None at any time from
7            February 1, 2009 through February 28, 2013, and who have not
             opted out of this Settlement after Notice, and who are therefore in
8            the Class that is certified for purposes of Settlement only.

9  Pl.'s Mot. Prelim. Approval Class Settlement ("Mot.") at 7, ECF No. 22-1.  "The class excludes

10  individuals who cannot be located by the Claims Administrator."  *Id.*

11         A party seeking to certify a class must demonstrate that it has met the requirements

12  of Rule 23(a) and at least one of the requirements of Rule 23(b).  *Amchem*, 521 U.S. at 614; *Ellis*

13  *v. Costco Wholesale Corp.*, 657 F.3d 970, 979–80 (9th Cir. 2011).  Although the parties in this

14  case have stipulated that a class exists for purposes of settlement, the court must nevertheless

15  undertake the Rule 23 inquiry independently, both at this stage and at the later fairness hearing.

16  *West v. Circle K Stores, Inc.*, No. CIV. S–04–0438 WBS GGH, 2006 WL 1652598, at *2 (E.D.

17  Cal. June 13, 2006).

18         Under Rule 23(a), before certifying a class, the court must be satisfied that:

19            (1) the class is so numerous that joinder of all members is
             impracticable (the "numerosity" requirement); (2) there are
20           questions of law or fact common to the class (the "commonality"
             requirement); (3) the claims or defenses of representative parties are
21           typical of the claims or defenses of the class (the "typicality"
             requirement); and (4) the representative parties will fairly and
22           adequately protect the interests of the class (the "adequacy of
             representation" requirement).
23

24  *Collins v. Cargill Meat Solutions Corp.*, 274 F.R.D. 294, 300 (E.D. Cal. 2011) (quoting *In re Itel*

25  *Sec. Litig.*, 89 F.R.D. 104, 108 (N.D. Cal. 1981)); *accord* FED. R. CIV. P. 23(a).

26         The court must also determine whether the proposed class satisfies Rule 23(b)(3),

27  on which plaintiffs rely in this action.  To meet the requirements of this subdivision of the rule,

28  the court must find "'questions of law or fact common to class members predominate over any

4

1    questions affecting only individual members, and that a class action is superior to other available

2    methods for fairly and effectively adjudicating the controversy.'" *Dukes*, 131 S. Ct. at 2558

3    (quoting FED. R. CIV. P. 23(b)(3)).  "The matters pertinent to these findings include: (A) the class

4    members' interests in individually controlling the prosecution or defense of separate actions;

5    [and] (B) the extent and nature of any litigation concerning the controversy already begun by or

6    against class members . . . ."  FED. R. CIV. P. 23(b)(3)(A)–(B).

7                1.    Numerosity

8                Although there is no absolute numerical threshold for numerosity, courts have

9    approved classes consisting of thirty-nine, sixty-four and seventy-one plaintiffs.  *Murillo v. Pac.*

10   *Gas & Elec. Co.*, 266 F.R.D. 468, 474 (E.D. Cal. 2010) (citing *Jordan v. L.A. Cnty.*, 669 F.2d

11   1311, 1319 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810).  Plaintiff states the

12   potential class consists of twenty-eight "Inventory Specialists employed by [defendant] between

13   from [sic] February 1, 2009 through February 28, 2013."  Mot. at 19.  When a class size is small,

14   courts consider factors such as "the geographical diversity of class members, the ability of

15   individual claimants to institute separate suits, and whether injunctive or declaratory relief is

16   sought."  *Jordan*, 669 F.2d at 1319.  While plaintiff did not specifically address these factors,

17   plaintiff explains in his motion that "[a]bsent a class action, most members of the class would find

18   the cost of litigating their claims to be prohibitive, and such multiple individual actions would be

19   judicially inefficient."  Mot. at 21.  The cost to potential class members of litigating an individual

20   action and the judicial efficiency of addressing class claims in one action weighs in favor of class

21   certification.  *See, e.g.*, *McCluskey v. Trs. of Red Dot Corp. Emp. Stock Ownership Plan & Trust*,

22   268 F.R.D. 670, 673–76 (W.D. Wash. 2010) (finding numerosity satisfied for class of twenty-

23   seven members after considering several factors including judicial economy and the ability of the

24   members to file individual suits).  Accordingly, the numerosity requirement has been met.

25               2.    Commonality

26               To satisfy the commonality requirement, plaintiffs must do more than show "they

27   have all suffered a violation of the same provision of law."  *Dukes*, 131 S. Ct. at 2551.  The

28   claims must depend upon a common contention that "must be of such a nature that it is capable of

5

1   classwide resolution—which means that determination of its truth or falsity will resolve an issue

2   that is central to the validity of each one of those claims in one stroke." *Id.*  It is not so much that

3   the class raises common questions: what is necessary is "'the capacity of a classwide proceeding

4   to generate common answers . . . .'" *Id.* (emphasis omitted) (quoting Richard A. Nagareda, *Class*

5   *Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. REV. 97, 132 (2009)).  "[T]he merits of

6   the class members' substantive claims are often highly relevant when determining whether to

7   certify a class."  *Ellis*, 657 F.3d at 981.

8               Here, plaintiff states the common question shared by potential class members is

9   whether they were misclassified as exempt employees, were not compensated for overtime, did

10  not receive rest and meal breaks, did not accrue vacation pay and did not receive timely pay

11  wages upon termination.  Mot. at 20.  All the potential class members were employed by

12  defendant as Inventory Specialists and were allegedly misclassified as exempt.  *Id.*  If the

13  classification is unlawful, each class member will have been injured by defendant's conduct.

14  This satisfies the requirement that plaintiff's claims "depend upon a common contention . . . [that

15  is] of such a nature that it is capable of classwide resolution."  *Dukes*, 131 S. Ct. at 2551.

16  Accordingly, the commonality requirement has been met.

17               3.      Typicality

18               "'[T]he commonality and typicality requirements of Rule 23(a) tend to merge'"

19  because both act "'as guideposts for determining whether under the particular circumstances

20  maintenance of a class action is economical and whether the named plaintiff's claim and the class

21  claims are so interrelated that the interests of the class members will be fairly and adequately

22  protected in their absence.'"  *Dukes*, 131 S. Ct. at 2551 n.5 (quoting *Gen. Tel. Co. of Sw. v.*

23  *Falcon*, 457 U.S. 147, 157–58 n.13 (1982)).  A court resolves the typicality inquiry by

24  considering "whether other members have the same or similar injury, whether the action is based

25  on conduct which is not unique to the named plaintiffs, and whether other class members have

26  been injured by the same course of conduct."  *Ellis*, 657 F.3d at 984 (internal quotations and

27  citation omitted); *Morales v. Stevco, Inc.*, No. 1:09–cv–00704 AWI JLT, 2011 WL 5511767, at

28  *6 (E.D. Cal. Nov. 10, 2011).  In this case, the potential class members had similar job duties,

6

1   were similarly misclassified as exempt employees and received compensation under the same pay

2   practices.  This satisfies the typicality inquiry.  *See Murillo*, 266 F.R.D. at 475.

3                    4.       Adequacy of Representation

4                    To determine whether the named plaintiff will protect the interests of the class, the

5   court must explore two factors: (1) do the named plaintiff and his counsel have any conflicts of

6   interest with the class as a whole, and (2) have the named plaintiff and counsel vigorously

7   pursued the action on behalf of the class.  *Hanlon*, 150 F.3d at 1020 (citation omitted); *see also*

8   *True v. Am. Honda Motor Co., Inc.*, No. EDCV 07–287–VAP (OPx), 2009 WL 838284, at *5

9   (C.D. Cal. Mar. 25, 2009) ("(1) the class representative must not have interests antagonistic to the

10  unnamed class members, and (2) the representative must be able to prosecute the action

11  'vigorously through qualified counsel'" (quoting *Lerwill v. Inflight Motion Pictures, Inc.*,

12  582 F.2d 507, 512 (9th Cir. 1978))).

13                   Nothing in the papers presently before the court suggests the representative

14  plaintiff has any conflicts of interest with the other class members.  *See* Mot. at 21.  Because

15  plaintiff's claims appear to be "completely aligned with [that] of the class," there is no conflict.

16  *Collins*, 274 F.R.D. at 301.

17                   With regard to the second factor, "[a]lthough there are no fixed standards by which

18  'vigor' can be assayed, considerations include competency of counsel and, in the context of a

19  settlement-only class, an assessment of the rationale for not pursuing further litigation."  *Hanlon*,

20  150 F.3d at 1021.  In addition, a named plaintiff will be deemed to be adequate "as long as the

21  plaintiff has some basic knowledge of the lawsuit and is capable of making intelligent decisions

22  based upon [the plaintiff's] lawyers' advice . . . ."  *Kaplan v. Pomerantz*, 131 F.R.D. 118, 122

23  (N.D. Ill. 1990).

24                   Plaintiff's counsel has described his experience in wage and hour litigation,

25  including class action lawsuits.  Thomas Decl. ¶ 16, ECF No. 22-2.  Plaintiff's counsel describes

26  the effort expended on this action thus far, which includes investigating defendant's operations in

27  four different states and analyzing employment and financial records.  *Id.*  Counsel also explains

28  the parties engaged in "substantial private settlement mediation discussions before Jeff Ross, a

1    well-known and respected mediator, who specializes in employment litigation, including class

2    actions." *Id.* ¶ 6.  These representations support a finding of vigor.  At least at this stage of the

3    settlement-approval process, plaintiff is an adequate class representative.  *See Falcon*, 457 U.S. at

4    160 (observing that finding of adequacy "particularly during the period before any notice is sent

5    to members of the class 'is inherently tentative'" (quoting *Coopers & Lybrand v. Livesay*,

6    437 U.S. 463, 469 n.11 (1978))).

7                5.        Predominance

8                "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are

9    sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623.

10   Although it is similar to Rule 23(a)'s commonality requirement, it is more demanding. *Id.* at

11   623–24.  To determine whether common questions predominate, the court must consider "the

12   relationship between the common and individual issues" by looking at the questions that preexist

13   any settlement. *Hanlon*, 150 F.3d at 1022.  The predominance inquiry focuses on the "notion that

14   the adjudication of common issues will help achieve judicial economy." *In re Wells Fargo Home*

15   *Mortg. Overtime Pay Litig.*, 571 F.3d 953, 958 (9th Cir. 2009) (internal quotations and citations

16   omitted).

17               Here, plaintiff states "[d]efendant's practice of failing to pay overtime, failing to

18   provide rest and meal breaks, and failing to timely pay wages upon termination is common to the

19   class members' claims and their damages and predominates over any issues applicable to any

20   individual members of the class."  Mot. at 21.  Plaintiff's motion demonstrates "[a] common

21   nucleus of facts and potential legal remedies dominates this litigation." *Hanlon*, 150 F.3d at

22   1022.  This action turns on whether defendant improperly classified Inventory Specialists as

23   exempt employees and failed to, *inter alia*, compensate them for overtime and meal and rest

24   period breaks.  While each class member will be entitled to damages according to the duration of

25   their employment with defendant, "'individual issues regarding damages will not, by themselves,

26   defeat certification under Rule 23(b)(3).'" *Murillo*, 266 F.R.D. at 477 (quoting *West*, 2006 WL

27   1652598, at *7–8).  Accordingly, the predominance requirement has been met.

28   /////

1    6.    Superiority

2         In resolving the Rule 23(b)(3) superiority inquiry, the court should consider class

3    members' interests in pursuing separate actions individually, any litigation already in progress

4    involving the same controversy, the desirability of concentrating the litigation in one forum, and

5    potential difficulties in managing the class action, although the last two considerations are not

6    relevant in the settlement context. *Schiller v. David's Bridal, Inc.*, No. 1:10–cv–00616

7    AWI-SKO, 2012 WL 2117001, at *10 (E.D. Cal. June 11, 2012) ("In the context of settlement,

8    however, the third and fourth factors are rendered moot and are not relevant . . . . because the

9    point is that there will be no trial . . . ." (citing *Amchem*, 521 U.S. at 620)).

10        Here, plaintiff explains in his motion there exists a "risk that a judgment could

11   make [defendant] insolvent." Mot. at 7. Plaintiff posits "due the [sic] financial condition of

12   [defendant], settling the case as a class is the most efficient way to ensure all class members

13   receive payment." *Id.* at 22. In support of the motion for preliminary approval of class

14   certification defendant has offered evidence of the likely insolvency of its company in the event it

15   faced separate judgments by individual claimants. Defendant provided the court with the tax

16   returns for both defendant and defendant owner Joseph Seidel for the years 2012 and 2011. *See*

17   ECF No. 24. During the hearing on the motion for preliminary approval, plaintiff's counsel

18   argued the tax returns are "fairly telling" and are adequate for the court to determine defendant's

19   insolvency. While plaintiff does not seek certification under Rule 23(b)(1)(B) and the court does

20   not make a finding under this section, *see Amchem*, 521 U.S. at 614 (explaining "Rule

21   23(b)(1)(B) includes, for example, 'limited fund' cases, instances in which numerous persons

22   make claims against a fund insufficient to satisfy all claims"); *see also In re Agent Orange Prod.*

23   *Liab. Litig.*, 506 F. Supp. 762, 789 (E.D.N.Y. 1980) ("The paradigm Rule 23(b)(1)(B) case is one

24   in which there are multiple claimants to a limited fund . . . and there is a risk that if litigants are

25   allowed to proceed on an individual basis those who sue first will deplete the fund and leave

26   nothing for the late-comers." (alteration in original) (internal quotations and citation omitted)),

27   the information provided is sufficient to establish defendant's potential inability to satisfy

28   /////

9

1    numerous separate judgments, which may compromise class members' interests in pursuing

2    separate actions individually.

3            Finally, as noted, if each class member brings a separate action, each claim would

4    be similar in nature and individual claims will tax individual resources of the members as well as

5    judicial resources.  In light of these factors, a class action is superior to individual resolution of

6    the wage and hour claims.

7        B.      Preliminary Fairness Determination

8                1.      Proposed Settlement Agreement[1]

9            The proposed settlement agreement contains the following provisions.  Following

10   mediation on January 23, 2013, the parties agreed to settle the Inventory Specialists' employment

11   claims for $300,000.  Settlement Agreement ¶ G, ECF No. 29.  Defendant admitted to

12   misclassifying the majority of Inventory Specialists as exempt, "but disputed the amount of

13   overtime hours worked as well as wages and penalties owed."  *Id* ¶ I; *see also id.* ¶ 13.1.  The

14   maximum settlement consideration of $300,000 "is inclusive of all Settlement Payments,

15   attorneys' fees, Litigation Expenses, Claims Administration Costs, and any Enhancement Award

16   to the Class Representative . . . [but] does not include [defendant's] legally required payroll

17   taxes."  *Id.* ¶ 1.18.

18           With regard to unclaimed amounts, the settlement agreement provides: "[t]he Total

19   Consideration Payment equals the Maximum Settlement Consideration less interest earned on the

20   Total Consideration payment as provided in Section 9.4."  *Id.* ¶ 1.32.  The total consideration

21   payment "will constitute adequate consideration for this Settlement and will be made in full and

22   final settlement of the Released Claims . . . ."  *Id.* ¶ 4.5.  "Unclaimed Amount" is defined as "the

23   total amount of money that reverts to the Class because Putative Class Members opted out or

24   could not be located . . . ."  *Id.* ¶ 1.33.  Plaintiff's counsel confirmed during the hearing on the

25   motion for preliminary approval that any unclaimed amounts or fees that are not approved by the

26   court will revert to the class.  *See id.* ¶ 5.1.

27   _____

28   [1] In accordance with the court's June 20, 2014 minute order following the hearing on the
     motion for preliminary approval, ECF No. 25, plaintiff submitted a corrected settlement
     agreement, ECF No. 29.

                                                  10

1    Class member payments will be "based on the number of Compensable

2 Workweeks worked by the Class Member as an Inventory Specialist" during the class period. *Id.*

3 ¶ 4.3. Each class member's settlement will "be calculated by multiplying the Weekly Settlement

4 Amount by the Class Member's Compensable Workweeks." *Id.* The Weekly Settlement Amount

5 is defined as "the Net Settlement Consideration divided by the total number of Compensable

6 Workweeks worked by all Class Members during the Class Period." *Id.* ¶ 1.36 Plaintiff's

7 counsel confirmed during the hearing the estimated amount class members will receive for each

8 pay period is approximately $301.39. *See* Thomas Decl. Ex. B. Class counsel also represented

9 during the hearing each class member will receive approximately $7,500 as a settlement payment.

10 The Class Period is defined as "the period from February 1, [2009] through February 28, 2013."

11 Settlement Agreement ¶ 1.7.[2] "Any Putative Class Member who opts out or cannot be located by

12 the Claims Administrator . . . shall not be subject to the Settlement Agreement and will not

13 receive his or her Settlement Payment." *Id.* ¶ 4.4. "If approved by the Court, the Class

14 Representative will receive an Enhancement Award" of $5,000, "upon Class Counsel's

15 application and the Court's approval." *Id.* ¶ 4.6.

16    With regard to costs and attorneys' fees, the settlement agreement provides class

17 counsel will submit an application for an award of attorneys' fees of no more than 30 percent of

18 the maximum settlement amount of $300,000. *Id.* ¶ 5.1. Defendant will not oppose a motion for

19 approval of attorneys' fees and litigation expenses. *Id.* The court notes class counsel intends to

20 seek reimbursement of costs "of not more than $15,000." Mot. at 16.

21    With regard to the enhancement award and penalties, class counsel will submit an

22 application for a $5,000 enhancement award for the class representative, to be paid out of the

23 $300,000 settlement amount. Settlement Agreement ¶ 6.1. Defendant will not oppose this

24 application. *Id.* Class counsel will request an additional $5,000 be paid out of the $300,000

25 /////

26

27   [2] Following receipt of the corrected settlement agreement, the court issued a minute order directing plaintiff to address a discrepancy with the class period definition. ECF No. 31. Plaintiff filed a notice of errata on July 15, 2014, clarifying the correct class period is "the period from February 1, 2009 through February 28, 2013." ECF No. 32. Accordingly, the court uses the corrected class period beginning on February 1, 2009.

28

1    settlement amount to the California Labor Commissioner as penalties recovered under the Private

2    Attorneys General Act. *Id.* ¶ 6.2(a).[3] Defendant will not oppose this request either. *Id.*

3          The settlement agreement also contains a "blow-out" clause. *See* MANUAL FOR

4    COMPLEX LITIGATION, *supra*, § 22.922 (defining the term as an optional condition used by

5    defendants in a Rule 23(b)(3) class action settlement requiring the number of opt-outs to remain

6    at or below a certain percentage or number of absent class members). The agreement states, "[i]f

7    twenty five percent (25%) or more of the Putative Class Members opt out of the Class, then

8    [defendant] shall have the right, in its sole and absolute discretion, to void the Settlement and to

9    revoke class certification." Settlement Agreement ¶ 8.6(D).

10         The settlement agreement states "[t]he Court shall retain jurisdiction for purposes

11    of monitoring and enforcement of this Settlement Agreement." *Id.* ¶¶ 10, 12.1.

12         The settlement agreement provides the following with regard to releasing

13    defendant from wage and hour claims:

14
15
16
17
18
19
20

> The Class Representative and all of the Class Members, on behalf of themselves, and each of their heirs, representatives, successors, assigns, beneficiaries and attorneys, hereby irrevocably and forever, compromise, release, waive, resolve, relinquish, discharge and settle each and all of the Released Entities from each of the Released Claims, whether or not mature, ripe or contingent, to the extent existing in their favor from February 1, 2009 through February 28, 2013. "Released Claims" means and includes all causes of action and claims related to the facts alleged in, or related to, those Alleged Claims in the Ross Complaint that pertain to Inventory Specialists, for the period of time they were employed as Inventory Specialists.

21    *Id.* ¶ 11.1. The class representative and defendant "expressly waive and relinquish all rights and

22    benefits they may have under" section 1542 of the California Civil Code "as well as any other

23    statutes or common law principles of a similar effect." *Id.* ¶ 11.3.

24    /////

25    /////

26    /////

27

28

---

     [3] The settlement agreement contains two paragraphs identified with the number "6.2." The court designates the first paragraph "6.2(a)" and the second paragraph "6.2(b)."

Finally, the settlement agreement provides the following with regard to tolling of the statute of limitations:

> [Defendant] agrees that the statute of limitations with respect to any claim or cause of action relating to the wage and hour claims by employees who may have been misclassified by [defendant] as exempt, but not included in this Settlement Agreement because they were not employed as Inventory Specialists, is hereby tolled from February 1, 2009 through the final approval of this action.

*Id.* ¶ 15.

    2.    Discussion

"At this preliminary approval stage, the court need only 'determine whether the proposed settlement is within the range of possible approval.'" *Murillo*, 266 F.R.D. at 479 (quoting *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982)). The following factors bear on the inquiry:

> i.    the strength of the plaintiffs' case;
>
> ii.   the risk, expense, complexity, and likely duration of further litigation;
>
> iii.  the risk of maintaining class action status throughout the trial;
>
> iv.   the amount offered in settlement;
>
> v.    the extent of discovery completed, and the stage of the proceedings;
>
> vi.   the experience and views of counsel; . . . and
>
> vii.  the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026 (citation omitted). The court must also consider the value of the settlement offer and whether the settlement is the result of collusion. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1290 (9th Cir. 1992). At the preliminary approval stage, the "initial evaluation can be made on the basis of information [contained in] briefs, motions, or informal presentations by parties," MANUAL FOR COMPLEX LITIGATION, *supra*, § 21.632, and "the [c]ourt need not review the settlement in detail at this time . . . ." *Durham v. Cont'l Cent. Credit, Inc.*, No. 07cv1763 BTM (WMc), 2011 WL 90253, at *2 (S.D. Cal. Jan. 10, 2011) (citing NEWBERG, *supra*, § 11.25). The court may not "'delete, modify or substitute certain provisions.'" *Hanlon*,

1    150 F.3d at 1026 (quoting *Officers for Justice v. Civil Serv. Comm'n of the City & Cnty. of S.F.*,

2    688 F.2d 615, 630 (9th Cir. 1982)).  "The settlement must stand or fall in its entirety." *Id.*

3    (citation omitted).

4              The court has reviewed the proposed settlement's terms and moving papers and

5    finds the settlement terms are, at this stage of the action, "'within the range of possible

6    approval.'"  *Murillo*, 266 F.R.D. at 479 (quoting *Gautreaux*, 690 F.2d at 621 n.3).  The parties

7    reached a settlement following participation in private mediation, which "tends to support the

8    conclusion that the settlement process was not collusive." *Villegas v. J.P. Morgan Chase & Co.*,

9    No. CV 09–00261 SBA (EMC), 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (citation

10   omitted).  It appears the settlement is a result of informed and non-collusive negotiations between

11   the parties.  With regard to the extent of discovery, "'formal discovery is not a necessary ticket to

12   the bargaining table.'"  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998)

13   (quoting *In re Chicken Antitrust Litig.*, 669 F.2d 228, 241 (5th Cir. 1982)).  Plaintiff's counsel

14   states the parties arrived at the settlement after conducting discovery that facilitated a review of

15   defendant's operations in four different states and its employment and financial records.  Thomas

16   Decl. ¶ 16.  While it does not appear extensive discovery was conducted, the court is satisfied the

17   discovery enabled the parties to reach a meaningful settlement agreement.  As "the [c]ourt need

18   not perform a full fairness analysis at this time because it will be done in connection with the

19   [final] fairness hearing," *Nieves v. Cmty. Choice Health Plan of Westchester, Inc.*, No. 08 CV 321

20   (VB)(PED), 2012 WL 857891, at *5 (S.D.N.Y. Feb. 24, 2012), this is sufficient for preliminary

21   approval.

22             The parties are advised, however, the court in its discretion does not plan to

23   maintain jurisdiction to enforce the terms of the parties' settlement agreements.  *Kokkonen v.*

24   *Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994); *cf. Collins v. Thompson*, 8 F.3d 657,

25   659 (9th Cir. 1993). Unless there is some independent basis for federal jurisdiction, enforcement

26   of the agreements is for the state courts. *Kokkonen*, 511 U.S. at 382.

27   /////

28   /////

1              3.      Court's Reservations

2              The court's preliminary approval is not without reservations.  As noted, when a

3  settlement is reached prior to formal class certification, "there is an even greater potential for a

4  breach of fiduciary duty owed the class during settlement."  *Bluetooth*, 654 F.3d at 946.

5  "Accordingly, such agreements must withstand an even higher level of scrutiny for evidence of

6  collusion or other conflicts of interest . . . before securing the court's approval as fair."  *Id.*

7  (citations omitted).  That the parties came to terms during a mediation with an experienced

8  mediator, although "a factor weighing in favor of a finding of non-collusiveness," is "not on its

9  own dispositive."  *Id.* at 948, 939 (reversing district court's approval of a class settlement even

10  though settlement was reached during a "formal mediation session, overseen by a retired

11  California Court of Appeal Justice.").  Signs of collusion include: (1) "when counsel receive a

12  disproportionate distribution of the settlement," *id.* at 947; (2) when the settlement agreement

13  contains a "clear sailing" arrangement, as here, in which defendant agrees not to contest the class

14  counsels' application for attorneys' fees, "which carries [with it] 'the potential of enabling a

15  defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an

16  unfair settlement on behalf of the class,'" *id.* (quoting *Lobatz v. U.S. W. Cellular of Cal., Inc.*,

17  222 F.3d 1142, 1148 (9th Cir. 2000)); and (3) when the class representative receives an

18  enhancement payment that is much higher than payments unnamed class members stand to

19  receive from the settlement, *Staton v. Boeing Co.*, 327 F.3d 938, 975 (9th Cir. 2003).

20              a.      Attorneys' Fees

21              With regard to attorneys' fees, as noted, class counsel intends to seek fees of not

22  more than 30 percent of the total settlement amount of $300,000.  "Where a settlement produces a

23  common fund for the benefit of the entire class, courts have discretion to employ either the

24  lodestar method or the percentage-of-recovery method."  *Bluetooth*, 654 F.3d at 942 (citation

25  omitted).  If the court employs the percentage-of-recovery method, "calculation of the lodestar

26  amount may be used as a cross-check to assess the reasonableness of the percentage award."

27  *Adoma v. Univ. of Phx., Inc.*, 913 F. Supp. 2d 964, 981 (E.D. Cal. 2012).  The court must employ

28  the method that will produce a reasonable result.  *Bluetooth*, 654 F.3d at 942.  When applying the

1   percentage-of-recovery method, "[t]he typical range of acceptable attorneys' fees in the Ninth

2   Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark."

3   *Morales*, 2011 WL 5511767, at *12 (citing *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir.

4   2000)).

5         The court questioned plaintiff's counsel regarding the 30 percent request during

6   the preliminary hearing.  Counsel represented the settlement agreement is not contingent on the

7   fee award and any amount of the fee not approved will go to the class.  Counsel also averred the

8   amount of work completed in this action will support a 30 percent award; and confirmed he will

9   submit detailed records for a lodestar cross-check.

10        Because 30 percent is within the accepted range set forth by the Ninth Circuit, and

11  the court is satisfied at this stage with counsel's representations during the hearing, this amount is

12  approved preliminarily.  However, the court is concerned with the request in light of the

13  benchmark for such an award of 25 percent and the settlement's having been reached during an

14  early stage of litigation.  *Bluetooth*, 654 F.3d at 942.  Here, it is possible the lodestar method will

15  produce a more reasonable result than the percentage-of-recovery method.  Therefore, as

16  confirmed by counsel during the hearing, plaintiff's counsel must provide the court with the

17  information to permit the court to perform a lodestar cross-check.  The report must contain a

18  detailed description of each task completed, the number of hours spent on each task, when the

19  work was completed, who performed the work, each person's hourly rate and the total number of

20  hours worked.

21                b.      Enhancement Award

22        With regard to the $5,000 enhancement award plaintiff intends to request as class

23  representative, "[e]nhancements for class representatives are not to be given routinely."  *Morales*,

24  2011 WL 5511767, at *12.  "Indeed, '[i]f class representatives expect routinely to receive special

25  awards in addition to their share of the recovery, they may be tempted to accept suboptimal

26  settlements at the expense of the class members whose interests they are appointed to guard.'"

27  *Staton*, 327 F.3d at 975 (alteration in original) (quoting *Weseley v. Spear, Leeds & Kellogg*,

28  711 F. Supp. 713, 720 (E.D.N.Y. 1989)).  To assess whether an incentive payment is excessive,

1   district courts balance "the number of named plaintiffs receiving incentive payments, the

2   proportion of the payments relative to the settlement amount, and the size of each payment." *Id.*

3   at 977.

4          During the hearing, plaintiff's counsel confirmed the settlement agreement is not

5   contingent on the enhancement award and a more detailed declaration will be provided with

6   plaintiff's request, which will include, *inter alia*, the number of hours plaintiff spent on this

7   action.  At this stage, considering counsel's representations at the hearing, the enhancement

8   award will be preliminarily approved.

9          However, the approval is not without reservation in light of the 1.6 percent of the

10   maximum settlement amount plaintiff intends to seek.  *See*, *e.g.*, *Monterrubio v. Best Buy Stores,*

11   *L.P.*, 291 F.R.D. 443, 462–63 (E.D. Cal. 2013) (finding proposed enhancement award of 1.8% of

12   the total settlement amount inappropriate and awarding an incentive fee of approximately .62% of

13   the total settlement for the purpose of preliminary approval).  Final approval of any enhancement

14   award will be subject to an evaluation of relevant factors "'includ[ing] the actions the plaintiff has

15   taken to protect the interests of the class, the degree to which the class has benefitted from those

16   actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and

17   reasonabl[e] fear[s of] workplace retaliation.'"  *Staton*, 327 F.3d at 977 (alteration in original)

18   (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

19          Plaintiff provided a declaration summarizing the work he performed in this action.

20   Ross Decl., ECF No. 22-3.  plaintiff states he acted as advisor to his counsel regarding the job

21   duties of an Inventory Specialist, reviewed discovery with counsel and fielded phone calls from

22   former employees of defendant and referred them to counsel.  *Id.*  Plaintiff's counsel confirmed

23   during the hearing his view the enhancement award is justifiable in light of plaintiff's

24   instrumental participation with class counsel.  However, plaintiff's declaration is not sufficient to

25   enable the court to make a well-informed decision regarding approval of plaintiff's proposed

26   enhancement award.  Prior to final approval, plaintiff must provide a more detailed declaration

27   describing his current employment status, any risks he faced as class representative, specific

28   activities he performed as class representative and the amount of time he spent on each activity.

Final approval will not issue without resolution of the court's concerns.  Because the court finds that the settlement terms are, at this time, "'within the range of possible approval,'" *Murillo*, 266 F.R.D. at 479 (quoting *Gautreaux*, 690 F.2d at 621 n.3), the court GRANTS preliminary approval of the proposed settlement.

E.      Class Notice

For any class certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances."  FED. R. CIV. P. 23(c)(2)(B). The notice must state in plain, easily understood language:

(i)     the nature of the action;

(ii)    the definition of the class certified;

(iii)   the class claims, issues, or defenses;

(iv)    that a class member may enter an appearance through an attorney if the member so desires;

(v)     that the court will exclude from the class any member who requests exclusion;

(vi)    the time and manner for requesting exclusion; and

(vii)   the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.*

The court has reviewed the proposed "Notice of Class Action and Proposed Settlement," Thomas Decl. Ex. B, and finds it fully conforms with due process and the applicable Rule.  *See* FED. R. CIV. P. 23(c)(2)(B).  The proposed notice is appropriate because it adequately describes the terms of the settlement, informs the class about the allocation of attorneys' fees, and will provide specific and sufficient information regarding the date, time and place of the final approval hearing.  *See Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1126–27 (E.D. Cal. 2009).

/////

/////

/////

/////

The Claims Administrator retained by plaintiff's counsel to administer the settlement is Gilardi & Co.  Thomas Decl. Ex. A ¶ 1.4.  The notice procedure in section 8 of the settlement agreement provides, in part:

> 8.2    Not later than forty-five (45) calendar days following the Date of Preliminary Approval, the Claims Administrator shall send, via U.S. Mail, to each of the Putative Class Members a "Notice of Pendency of Class Action Settlement" (hereafter, "Notice"), an Opt-Out Form, and a Settlement Claim Certification Form to be agreed upon by the parties or, if not, determined by the Court, and attached to, and made part hereof as Exhibit "A." The Claims Administrator shall send each mailing to the Last Known Address of each Putative Class Member after complying with the procedures specified in Section 8 of this Settlement.
>
> 8.3    Prior to mailing the Class Notice to each Putative Class Member, the Claims Administrator shall undertake all necessary measures to confirm the current accuracy of the Last Known Address for each Putative Class Member. The Claims Administrator shall make all reasonable efforts to assure that all communications are made to current addresses and a class list shall be maintained and continuously updated with all new Putative Class Members contact information.

*Id.* ¶¶ 8.2, 8.3.

Additionally, plaintiff's counsel represented during the hearing that, while most of the twenty-eight class members are not currently employed by defendant, the parties have accurate addresses for the class members.  Plaintiff's counsel also anticipates none of the class members will opt out of the class action.  In light of the small class size and the accurate addresses obtained by counsel, the notice and the mode of delivery by mail is appropriate.

/////
/////
/////
/////
/////
/////
/////
/////

19

F.      Final Approval Hearing Schedule

The court adopts the following proposed hearing schedule as set forth in section 8 of the proposed settlement agreement, Settlement Agreement ¶ 8, and plaintiff's motion, Mot. at 23:

| Date | Event |
| --- | --- |
| 3 Days[4] | Deadline for defendant to provide to the claims administrator the following information as to each class member: (1) the last known address; (2) the full name; (3) telephone numbers; (4) date of birth; and (5) social security number |
| 45 Days | Deadline for the claims administrator to mail notice packets to class members |
| 105 Days | Deadlines for opting out of the settlement class and for objecting to the settlement |
| January 1, 2015 | Deadline for filing list of any opt-outs with the court |
| January 2, 2015 | Deadline for filing briefing in support of final approval of settlement |
| January 16, 2015 at 10:00 a.m. in Courtroom 3 | Hearing on final approval of settlement, award of plaintiffs' attorneys' fees and reimbursement of expenses, and such other matters as the court may deem appropriate |

G.      Class Counsel

In light of counsels' experience in wage and hour class action litigation, the court appoints Brownstein Thomas, LLP and the Law Offices of Frank S. Moore as class counsel.

/////

/////

/////

---

[4] The number of days as used here refers to the number of days after the date on which this order is filed.

20

IV.      CONCLUSION

       For the foregoing reasons,

       1.     Brownstein Thomas, LLP and the Law Offices of Frank S. Moore are appointed as class counsel.

       2.  Preliminary certification of the following class and collective action is granted:

          The 28 employees identified as Inventory Specialists who were misclassified as exempt employees by Bar None at any time from February 1, 2009 through February 28, 2013.

       3.  Preliminary approval of the settlement is granted.

       4.  Approval of the proposed notice is granted.

       5.  The proposed hearing schedule is adopted as set forth above.

       6.  Class counsel and plaintiff shall file a motion for attorney's fees, costs, and class representative payment by October 10, 2014.

       IT IS SO ORDERED.

DATED:  August 19, 2014.

_____
UNITED STATES DISTRICT JUDGE